IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO.: 06-00526 |
| | : | |
| DANIEL CHARLES, | : | |

**MEMORANDUM**

**Stengel, J.**  March 17, 2010

A jury convicted Daniel Charles on six counts arising out of a straw purchase of a hand gun, a robbery of a Rite Aid store in North Philadelphia, and his possession of a firearm as a convicted felon. His pending motion for judgment of acquittal concerns his conviction for conspiracy to commit Hobbs Act robbery (Count III), Hobbs Act robbery (Count IV), and using and carrying a firearm during a crime of violence, i.e., the Hobbs Act robbery (Count V). I will deny this motion.

The jury returned a verdict on February 22, 2010. Mr. Charles, essentially, challenges the factual basis for the jury's finding. He contends that the assistant manager of the Rite Aid, Ernesto Elfante, described the approximate height of, and the clothes worn by, one of the three robbers. Mr. Elfante was describing the robber who approached him and ordered him, at gunpoint, to open a safe in the Rite Aid office. The government inferred that the "third robber" (the robber who pointed the gun at him and demanded the money from the safe) was Mr. Charles. Mr. Charles argues the jury verdict should be overturned because Mr. Elefante's description appeared to be wrong as to Mr. Charles's height and as to the clothing Mr. Charles was wearing when the police arrested him later

on the night of the robbery.

Mr. Charles and his two codefendants, Aaron St. Jean and Walter Carolina, previously worked at the Rite Aid. Mr. Elfante testified that he was familiar with the three young men. He could not, however, identify the men as those who robbed the Rite Aid because the robbers were wearing masks. Mr. Elfante also testified to being extremely frightened and, in fact, his demeanor at trial suggested that he still is emotionally upset by his experience as a victim of this robbery.

Mr. Elfante identified the so-called "third robber" as approximately 6'1" tall and wearing all black clothing. Another employee of the Rite Aid identified the clothes of the "third robber" as "all black."

The only evidence introduced as to Mr. Charles's height was a form the police completed at the prison while processing Mr. Charles at the time of his arrest. The form stated Mr. Charles was 5'8" in height.[1] In his closing argument, Ms. Charles's attorney noted that the jury had an opportunity to observe Mr. Charles in the courtroom and that he, according to counsel, was certainly shorter than 6'1" tall. Counsel for the government argued that Mr. Elfante was terrified during the robbery, that he was focused on the gun, and that his emotional condition and the presence of the gun affected his recollection of the exact height of the "third robber."

---

[1] The officer who processed Mr. Charles testified he would put on the form the height the prisoner stated, even if he did not think it was true. There was no evidence the officer measured Mr. Charles.

As to the clothing, all witnesses identified the three robbers as wearing dark clothing, some of which was described as "all black." In his motion for judgment of acquittal, Mr. Charles argues he was not wearing clothes similar to those worn by the "third robber" when he was arrested on the evening of the robbery at his home, which was several blocks from the robbery. The jury heard testimony that Mr. Charles, in fact, entered his bedroom in the time period after the robbery and that he was leaving his home at the time he was arrested. There was certainly an inference, at least, that he could have changed clothes at his home.

Every argument presented in Mr. Charles's motion for judgment of acquittal was presented to the jury. It was for the jury to determine whether the "inconsistency" regarding Mr. Charles's height and the fact that Mr. Charles was arrested wearing clothing that was not "all black" made a difference to them. It appears that the jury did not find these two points sufficient to raise a reasonable doubt in the context of all the evidence. For example, Mr. Charles undoubtedly was involved in the straw purchase of two guns, one of which was recovered at the scene of the robbery. The gun found in Mr. Charles's room was the second gun obtained during the straw purchase. Further, during their search, the police found a box of quarters in a closet in Daniel Charles's bedroom. The box contained fifty rolls of quarters, each in the amount of $10.00. Testimony from a witness from Rite Aid and from the police investigators establish a $500 box of quarters had been taken during the robbery. Mr. Charles argues that the police found the evidence

in a room he shared with his brother, Cliff, and that this, somehow, casts doubt on whether Daniel Charles placed the box of quarters in the closet. The jury heard testimony from Cliff Charles and was in the best possible position to evaluate whether the presence of that box of quarters, exactly as described by the Rite Aid witness, in Daniel Charles's bedroom shortly after the robbery was indicative of Daniel Charles's guilt.

Because these issues were presented to the jury and because the jury found against Mr. Charles, the court will not enter a judgment of acquittal. These were fact issues presented to the fact finder and not a proper subject for a request for judgment as a matter of law. See United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005) (noting the court must "not usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury"). This motion is denied.

An appropriate order follows.